UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENYA CALVIN-WHEELER,

    Plaintiff,

v.                                                                                                               Case No. 8:19-cv-2989-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

        This is an appeal of the administrative denial of supplemental security income (SSI).[1] *See* 42 U.S.C. § 1383(c)(3). Plaintiff argues the Administrative Law Judge (ALJ) erred by classifying her work as a self-employed hairstylist as past relevant work. Plaintiff also contends that the Appeals Council (AC) erred in considering treatment records Plaintiff submitted to the agency after the ALJ's decision. After considering Plaintiff's arguments, Defendant's response, and the administrative record (docs. 13, 19), I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence. I affirm the ALJ's decision.

    *A. Background*

        Plaintiff Kenya Calvin-Wheeler was born on June 30, 1977, and was 41 years old on the date of her administrative hearing. (R. 115) Plaintiff is a high school graduate with a post-graduate certificate in accounting, and she also attended cosmetology school. (R. 115, 119) She lives with her two daughters, one an adult and one a middle schooler. (R. 126-27) Plaintiff has worked as a teacher's aide for special needs children at public schools and as a self-employed hairstylist. (R.

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

119) Plaintiff alleges she became disabled on August 30, 2013, due to back problems, arthritis, allergies, and vision issues. (R. 336)

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of "degenerative disc disease of the lumbar spine and asthma." (R. 13) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled, despite these impairments, as she retains the residual functional capacity (RFC) to perform light work:

> Specifically, the claimant can lift up to 20 pounds occasionally, lift and/or carry up to 10 pounds frequently. She can stand and/or walk a total of six hours in an eight-hour workday and sit a total of six hours in an eight-hour workday. She can push and/or pull limited to those same weights. She can occasionally climb, stoop, and crawl but never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, pollens, and poor ventilation as well as hazardous machinery and unprotected heights.

(R. 15) The ALJ found that, with this RFC, Plaintiff could perform her past relevant work as a hairstylist. (R. 18) After the ALJ's decision, Plaintiff submitted treatment records from Gracepoint, a mental health care provider in Tampa, dated December 17, 2018, through July 17, 2019. (R. 66-81) She also submitted treatment records dated January 25, 2019, through June 21, 2019, from the Pain Healing Center. (R. 82-109) The AC considered this evidence but found it "[did] not show a reasonable probability that it would change the outcome of the decision." (R. 2) The AC denied review. Plaintiff, her administrative remedies exhausted, filed this action.

*B. Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which

2

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v.*

3

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

### C. Discussion

#### 1. Past relevant work

Plaintiff argues that her work as a hairstylist in 2009 was not past relevant work because she did not perform it at the substantial gainful activity level.  Specifically, she contends she did not earn enough styling hair and did not perform the job long enough to learn it (doc. 19 at 5-7).  The Commissioner responds that a claimant's earnings are not dispositive of the issue, and Plaintiff has not met her burden at step four (*Id*. at 7-10).  I agree with the Commissioner.

At step four of the sequential evaluation process, the ALJ must determine the claimant's RFC and ability to perform past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  A claimant is not disabled if he or she is capable of performing past relevant work, defined as work done within the last 15 years that constituted substantial gainful activity and lasted long enough for the claimant to learn the work.  *See* 20 C.F.R. § 416.960(b)(1); *see also Eyre v. Comm'r of Soc. Sec.*, 586 F. App'x 521, 523-24 (11th Cir. 2014) (*per curiam*).  The claimant bears the burden of demonstrating that prior work experience was not "past relevant work."  *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) ("[T]he claimant bears the burden of showing that certain work experience is not past relevant work.").  Even though the burden lies with Plaintiff, the ALJ must consider all of the duties of Plaintiff's past relevant work and evaluate Plaintiff's ability to perform that work in spite of her impairments.  *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 831 (11th Cir. 2013).

As an initial matter, at her hearing Plaintiff did not raise the issue of whether her hair stylist job was past relevant work, nor did her attorney object to the VE's testimony identifying Plaintiff's prior work as a hair stylist as past relevant work. Consequently, the ALJ was not obligated to specifically address the concerns Plaintiff now raises for the first time. *See e.g., New v. Comm'r of Soc. Sec.*, No. 5:12-cv-211-Oc-18PRL, 2013 WL 3804846, at *3 (M.D. Fla. July 8, 2013) (collecting cases and stating that because claimant failed to raise this issue before the ALJ or object to the VE's testimony regarding past relevant work, "the ALJ was not obligated to specifically address the concerns – or rather, argument – that [Claimant] now raises"); *Whittemore v. Comm'r of Soc. Sec.*, No. 3:09-cv-1242-J-MCR, 2011 WL 722966, at *5 (M.D. Fla. Feb. 23, 2011) (finding that "the ALJ was not required to specifically discuss his reasons for concluding Plaintiff's past work as a real estate agent qualifies as substantial gainful activity" because the plaintiff had not raised the issue to the ALJ or objected to the VE's work summary).

Addressing the merits of Plaintiff's argument, substantial evidence supports the ALJ's conclusion that Plaintiff's prior work as a hair stylist constituted past relevant work. Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. §§ 416.910, 416.972. Substantial work activity involves "doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 416.972(a). Gainful work activity is work that is done "for pay or profit." 20 C.F.R. § 416.972(b).

A chief consideration in determining whether prior work was substantial gainful activity is earnings. 20 C.F.R. § 416.974(a)(1); *Eyre*, 586 F. App'x at 524. "The ALJ ordinarily will consider that the claimant either was or was not engaged in substantial gainful activity if her average monthly earnings are above or below a certain amount established by the Social Security

Administration's earnings guidelines." *Eyre*, 586 F. App'x at 524 (citations omitted). However, earnings are not dispositive. *Id.* Even if a plaintiff's monthly earnings fall below the guidelines, if other evidence indicates that a plaintiff engaged in substantial gainful activity, the ALJ can "consider other information, including whether the work performed was 'comparable to that of unimpaired people in [the claimant's] community who [were] doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work.'" *Id.* (quoting 20 C.F.R. §§ 404.1574(a)(1), (b)(3)(ii)(A), 416.974(a)(1), (b)(3)(ii)(A)).

In 2009, the substantial gainful activity amount was $980.00 per month. *See* 20 C.F.R. § 416.974(b)(2)(ii); Social Security Administration Programs Operations Manual System (POMS), DI § 10501.015(B). That year, Plaintiff's earnings report shows she earned a total of $8,335.00 in self-employment earnings. (R. 322)[2] Assuming she worked as a hair stylist for all 12 months of 2009 (a detail the ALJ did not investigate), her monthly earnings from that job were $694.00, below the guidelines for substantial gainful activity. The ALJ questioned her about her job at the hearing:

> Q: In 2009, you had about $8,400.00 in self-employment earnings. Do you remember what you were doing there?
> A: That was probably doing hair because I also went to school for cosmetology, I forgot about that, back in 2001.
> Q: So you probably had a little side business just doing hair for friends and neighbors and things like that?
> A: Yes.
> Q: So, what kind of things were you doing? Gold Service Hair Stylist?
> A: Yes.
> Q: Okay, so you did everything?
> A: Yeah.

---

[2] Also in 2009, Plaintiff earned $2,861.88 at DL Quick Service Restaurants and $233.09 at Modern Business Associates. (R. 322) Although the ALJ referred to Plaintiff's self-employment as a side job, styling hair was her primary source of income that year.

6

>    Q:   You did the cutting, the tinting –
>    A:   I didn't do nails.
>    Q:   But, everything hair? All hair styles?
>    A:   Uh-huh.

(R. 119) Plaintiff later clarified, in response to a question posed by the VE, that she worked as a hairstylist "as a non-professional." (R. 138) Although she went to cosmetology school, she explained, she repeatedly failed the licensing exam. (*Id.*) Despite this, she confirmed she was able to do cut and color and all hairstyles. Considering this, the VE categorized Plaintiff's past relevant work as a hairstylist, DOT # 332.271-018, light level, SVP 6. (R. 138) The VE emphasized: "I just want to say about the hair stylist position. So, she performed the functions of the job, but she's not licensed." (*Id.*) After the ALJ posed the hypothetical, the VE testified that Plaintiff was capable of performing the hairstylist job. (R. 139) Plaintiff did not object at the hearing, and the ALJ relied on this testimony. *See New*, 2013 WL 3804846, at *5 (citing 20 C.F.R. § 416.960(b)(2)) ("An ALJ may rely on a VE's testimony regarding the demands of a plaintiff's past relevant work and the plaintiff's ability to perform her past relevant work."). The ALJ and the VE questioned Plaintiff about her duties as a hairstylist, and their exchange convinces me they considered whether Plaintiff's work compared to hair stylist work performed by others, accounting for the time, skill, and responsibility required to do the job. *See Eyre*, 586 F. App'x at 524.

Without developing her argument, Plaintiff argues she did not work as a hairstylist long enough to learn how to do it (after all, she was unlicensed because she failed the exam), a requirement for past relevant work. The hair stylist position is an SVP of 6, meaning it requires one or two years of training to learn how to do the job. Plaintiff testified she went to cosmetology school in 2001 (a year she also reported self-employment earnings), and her self-employment earnings from work as a hair stylist occurred in 2009. Although Plaintiff's work as a hair stylist

7

may not have risen to substantial gainful activity levels for an entire year, the ALJ had substantial evidence to conclude this work activity qualifies as past relevant work. *See Crozier v. Comm'r of Soc. Sec.*, No. 2:18-cv-169-FtM-MRM, 2019 WL 1091245, at *3-4 (M.D. Fla. Mar. 8, 2019).

### 2. *Evidence submitted to AC*

Plaintiff's second argument is that the AC erred in its consideration of new evidence. Plaintiff submitted records from Gracepoint, a mental health center, for treatment between December 17, 2018, and July 17, 2019. (R. 66-81) She also submitted treatment notes dated January 25, 2019, through June 21, 2019, from the Pain Healing Center. (R. 82-109) Both sets of records post-date the ALJ's November 19, 2018 decision.

A claimant may present evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. 20 C.F.R. § 416.1470(b); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015). Evidence is material if a reasonably possibility exists that the evidence would change the administrative result. *Washington*, 806 F.3d at 1321. New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 416.1470(b). The Appeals Council must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence. *Ingram*, 496 F.3d at 1261 (quotation marks omitted); *see also Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*). In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g) "must show, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by

8

substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).

Here, the evidence Plaintiff submitted to the AC is neither new nor material. The AC, in denying Plaintiff's request for review, stated: "You submitted treatment notes from Gracepoint dated December 17, 2018 – July 17, 2019 (16 pages) and Pain Healing Center dated January 25, 2019 – June 21, 2019 (28 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision." (R. 2) Although Plaintiff seeks more of an explanation, the AC is required to consider new evidence but not required to explain its decision when denying review. *See* 20 C.F.R. §§ 416.1467, 416.1470; *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("because a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review").

Additionally, Plaintiff does not develop her argument by citing to specific records and relating them to the period on or before the ALJ's decision. Evidence may be chronologically relevant even if it post-dates the ALJ's decision. For instance, in *Washington*, 806 F.3d at 1322, the Eleventh Circuit considered an examining psychologist's opinions to be chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision." The psychologist had reviewed the claimant's treatment records from the period before the ALJ's decision; the claimant had told the psychologist he had suffered from the conditions "throughout his life" (which obviously included the relevant time period); and there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision." *Id.*; *see also Wordsman v. Berryhill*, 2019 WL 1349821, at *4-5 (M.D. Fla. Mar. 26, 2019) (remanding to the Commissioner for reconsideration of evidence submitted to the AC for the first time; evidence that post-dated relevant period by four months).

On the other hand, in *Stone v. Commissioner of Social Security Administration*, 658 F. App'x 551, 555 (11th Cir. 2016), the Eleventh Circuit found the circumstances "significantly different" from those present in *Washington*. The records in *Stone* "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. *Id.* And in *Hargress v. Commissioner of Social Security Administration*, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Eleventh Circuit found that progress notes post-dating the ALJ's decision did not "relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from *Washington*." *Id.*; *see also Smith*, 272 F. App'x at 801-02 (affirming district court's decision; new evidence submitted to AC did "not establish a likelihood that the ALJ would have reached a different result," in part because they post-dated the ALJ's decision by between four and eight months). Evidence that a condition the ALJ previously considered has deteriorated may entitle a claimant to benefits under a new application, but it is not probative of whether a person is disabled during the specific period under review. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *see also Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding MRI report prepared four months after ALJ's decision not chronologically relevant or material as there was no indication report related back to the relevant time period).

I find this case more like *Stone* and *Hargress* and less like *Washington*. Without pointing me to specific pieces of evidence or explaining why, Plaintiff argues that Gracepoint's records "demonstrate that the claimant had significant mental symptoms that would have at least moderately impacted her ability to interact and relate with people." (Doc. 19 at 12) And, she contends, the Pain Healing Center's records "tend to show that the claimant's back and pain

limitations were more severe, than was thought to be the case at the time of the [ALJ] decision." (*Id.*)

The Pain Healing Center treated Plaintiff for back pain and medication management before the ALJ's decision and continued to treat her afterwards. At her most recent appointment on June 20, 2019, she described moderate back pain made worse by standing and cleaning. (R. 83-86) She had not tried epidural injections and was re-prescribed hydrocodone with acetaminophen. (R. 84) There is nothing in the records indicating they relate to the period at issue; they do not demonstrate that the ALJ's decision lacks substantial evidentiary support.

At Gracepoint Plaintiff received treatment for her depression symptoms after the date of the ALJ's decision. In January 2019, Plaintiff sought treatment from Gracepoint for the first time since May 2018. (R. 74-81) She "disclosed not having stable housing at this time[,] stating that she is currently staying with a friend and 2 of her 3 children." (R. 74) She had stopped taking medication the month before (December 2018) and since then was experiencing depressed moods, irritability, disturbed sleep, racing thoughts, and lack of motivation. (*Id.*) She attended outpatient therapy appointments with Alicia Parks, A.R.N.P., approximately once a month from January 2019, through July 2019. (R. 67-73) These records show that her "depressive symptoms [had] worsened" since May 2018. (R. 68) Nonetheless, she reported significant improvement on Effexor, Buspar, and Trazodone (later replaced with Lorazepam). (R. 72-73) Gracepoint's records show that Plaintiff's condition had declined because she had stopped taking her medication in December 2018 (one month after the ALJ's decision and shortly before she lost her house). (R. 74, 77) As such, they do not relate to the period at issue. My review of the records she submitted to the AC confirms that substantial evidence supports its decision to deny review.

11

*D.  Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on October 9, 2020.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

13